UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------X

UNITED STATES OF AMERICA,

           -against-

MICHAEL GARRETT,

           Defendant.

-------------------------------------------------X

13-Cr.149 (KAM)

# MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION TO ADMIT UNCHARGED CRIMES EVIDENCE

KELLEY J. SHARKEY, ESQ.
26 Court Street, Suite 2805
Brooklyn, New York 11242
(718) 858-8843

Attorney for Michael Garrett

February 27, 2015

A.     Introduction

By Motion in Limine ECF # 182 the Government seeks to introduce "other act evidence" at the trial of Michael Garrett. They justify the introduction of other crimes evidence not charged in the indictment by contending that the evidence is "direct evidence of and inextricably intertwined with the charged racketeering and conspiracy offenses and/or admissible pursuant to Rule 404b."

The Application of Rule 404b

Other-crimes evidence, since it may improperly implicate a defendant's character and a propensity for criminal conduct, has been long singled out for careful analysis. The core problem with other crimes evidence, as the United States Supreme Court pointed out in Michelson v. United States, 335 U.S. 469 (1948), is not that such evidence lacks persuasive value. The vice of such evidence is just the opposite, *i.e.*, it may "over persuade" a jury:

> The inquiry [into character] is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so over persuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.

Id. at 475-76.

In United States v. Murray, 103 F.3d 310, 316 (3d Cir. 1997), then Judge Alito in his decision emphasized the need for trial judges "to exercise particular care in admitting such evidence," and noted at least two reasons for the exercise of such caution: First, the line between what is permitted and what is not prohibited under Rule 404(b) is sometimes quite subtle. Second, Rule 404(b) evidence sometimes carries a substantial danger of unfair prejudice and thus raises

1

serious questions under Fed. R. Evid. 403. Id.

Other scholars have also opined on the dangers and difficulties inherent in admitting other crimes evidence, as applications for introduction are often merely glorified attempts at introducing character evidence against the defendant. A treatise on the federal rules of evidence by Professors Saltzburg, Martin and Capra evaluate the issue in a helpful way. They note that when deciding if bad acts evidence is offered to prove character or no character, they ask the Judge to engage in a two-step reasoning process. First to infer from behavior on one occasion something about the nature of the person and then to infer from that how the person would likely have behaved on a different occasion when the only connect between the two occasions is the fact the Judge believes that a person of a certain type would act in same manner on both occasions. If that is the case the proffered evidence is character evidence. On the other hand if the judge can reason from one act without out going through step 1 (infer nature of individual from previous behavior) the evidence is not character evidence. Saltzburg, Martin & Capra, Federal Rules of Evidence Manual (9th Ed. Lexis-Nexis 2006 at 404-422).

Evidence proffered under Rule 404(b), must meet three basic criteria before it can be properly admitted at trial. It must be: offered for a proper purpose; relevant under Rule 402; and the evidence must be of the type whose probative value substantially outweighs the potential for unfair prejudice. Huddleston v. United States, 485 U.S. 681, 691 (1987).

Fed. R. Evid. 404(b) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character
of a person in order to show that he acted in conformity therewith. It may,
however, be admissible for other purposes, such as proof of motive, opportunity,
intent, preparation, plan, knowledge, identity, or absence or accident...

Rule 404(b) must be read with Fed. R. Evid. 403, which provides for the exclusion of relevant evidence if:

> Its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Despite the inclusive approach to other act evidence that controls in this Circuit, United States v. Pitre, 960 F. 2d 1112 (2d Cir. 1992), the probative value of evidence offered under Fed. R. Evid. 404 (b) is still subjected to Fed. R. Evid. 403 analysis. United States v. Levy, 731 F.2d 997 (2d Cir. 1984). This balancing test is a codified version of the common law tradition that shielded a defendant from evidence of guilt by reputation. United States v. Cook, 538 F.2d 1000, 10004 (5th Cir. 1976).

This Circuit and others have reversed convictions when District Courts have improperly admitted 404(b) evidence that adversely affected the jury's consideration of the evidence. In United States v. Figueroa, 618 F. 2d 934 (2d Cir. 1980) the Court reversed a conviction where evidence was adduced concerning a prior drug sale and the defense was based upon the theory that conduct had never taken place. (See United States v. Colon, 880 F.2d 650 (2d Cir. 1989). See also, United States v. Samuel Charles Richards, 13-2287, slip op. (6th Cir. Feb. 6, 2015) (Conviction reversed where trial court erred in admitting evidence of prior drug convictions and abused its discretion in finding probative value was not outweighed by prejudice.) The government's proffered evidence in this case does not satisfy the requirements of Rule 404b, nor should the evidence be introduced under any other theory.

The government's application overreaches in an impermissible manner that will deny Michael Garrett a fair trial. The instant indictment charges him with crimes covering a five-year

3

period January 2007 - April 2013 and is expansive including 50 anticipated government witnesses and documentary proof derived from over 17,000 pages of PDF'd documents including large quantities of telephone records, e-mail correspondence, and business records; gigabytes worth of electronic files including cellphone contents, e-mails, spreadsheets and the contents of several hard drives which purportedly contain large quantities of sensitive material; hundreds of consensually recorded telephone calls; hours of surveillance videos and a large number of promotional videos downloaded from YouTube. The government's application to admit the multitude of "other crimes" evidence is likely to overwhelm the jury with propensity evidence, create confusion and result in multiple trials within the current litigation. There are serious issues of fairness about the quality of the proof the government seeks to provide the jury with their proffered evidence and fair notice of same.[1]

The government contends that "all of the evidence discussed is direct proof of and inextricably intertwined with the racketeering and conspiracy offenses charged in the indictment" (Govt. brief at 26) and therefore not subject to 404(b) analysis. Not so. In United States v. Kassir, 79 Fed. R. Evid. Serv. 425, 2009 WL 976821 (S.D.N.Y. 2009), Judge Keenan rejected arguments that certain proffered uncharged acts were inextricably intertwined with the conspiracy under standards of the Government's principal case, United States v. Gonzales, 110 F.3d 936, 942 (2d Cir. 1977). As here, the acts in Kassir (which included prior associations with other terror groups, attendance of jihad training camps, and admissions to having killed others) were historic

---

[1] First, in many of the requests the government does not identify who the various persons are and instead uses a series of covers like "another individual," "a person," "Scranton Females," "CWS," CW1, CW2 , individual #2, individual #3, individual #4 etc. Time frames of incidents are vague, and witnesses to the proffered event (when it can be discerned) helpful to the defense are missing.

and discrete offenses not undertaken to conceal or further the charged conduct and were remote in time and not essential to completing the story.

The other crimes evidence from the 1990's involved a course of conduct that ended no later than 2001, when Garrett was incarcerated. After a lengthy hiatus, the government contends he became a leader of the organization and the charged crimes were committed. There is no need for the government to go back to the 1990's to show that he knows Rivera and certain witnesses mentioned in the government's motion, and the jury will not be confused if such evidence is excluded. That Garrett allegedly assaulted people in the 1990's is not relevant to whatever means or methods of control he and his alleged co-conspirators used to maintain their position in the charged conspiracy starting in 2007. Such evidence simply paints him as a violent man with a propensity to engage in the charged conduct. If the government has proof that he sold drugs, committed acts of violence, and engaged in sex trafficking between 2007 and 2013, the "fact" that he engaged in similar conduct a decade or more before is unnecessary and inflammatory. And if the government's proof of the charged conduct is weak or questionable, the jury should not be buried in evidence of past conduct to persuade them that if he did it before, he must have done it years later.

Rule 403 is a balancing test. It is not sufficient that the government assert that the proffered other crimes evidence is relevant. Even relevant evidence is subject to exclusion. Here, the government has not demonstrated the relevance of the stale proof it wants to introduce, and the gap between the 1990's and the beginning of the charged conspiracy in 2007 conclusively shows that the stale proof is not "inextricably intertwined" with the charged crimes. Nor has the government made an argument that the stale proof is admissible under Rule 404 to prove intent,

5

knowledge, or absence of mistake.

For these reasons, the Court should exercise its discretionary powers in this case and preclude the government from reaching back to the 1980's and 1990's for uncharged crimes. The prosecution seeks to introduce evidence of the virtually identical charges dating from the 1990's for which the defendants are on trial – it is propensity evidence. The proof of prior crimes and methods of operation in the 1990's is only marginally relevant to the charges (if relevant at all), remote in time, and extremely prejudicial. See Fed. R. Evid. 404(b), United States v. Hubert, 138 F.3d 912 (11th Cir. 1998) (Admission of co-conspirators testimony regarding his drug dealings with defendant during 20 years preceding the period covered by indictment, violated rule excluding other act evidence, in that evidence had no value except to prove defendants criminal disposition, notwithstanding the governments claim that it was necessary to explain circumstances of charged crimes and clarify relationship between defendant and coconspirator.); United States v. Edelmann, 458 F.3d 791, 809 (8th Cir. 2006). (Evidence of a defendant's prior bad act is admissible to prove motive, intent, knowledge, or identity, if it is:(1) relevant to a material issue; (2) similar in kind and close in time to the crime charged; (3) proven by a preponderance of the evidence; and (4) if the potential prejudice does not substantially outweigh its probative value.)

**More specific arguments follow:**

B. **The Prosecution's Other Act and 404b Application to admit the following evidence should be denied.**

**1. Drug Trafficking**

a) The prosecution seeks to introduce testimony through CW1 that he began selling crack for Garrett in 1998, nine years before the instant indictment. Additionally, the government seeks

to introduce evidence that five others also worked for Garrett in this endeavour and guns were kept at Garrett's residence in Brooklyn. Without providing a time frame or disclosing identities – so Mr. Garrett can effectively respond to their proffer – the prosecution seeks to have CW1 testify about a planned but incomplete shoot out w/ a rival dealer and an incident on that same day with "another individual" who stole a gold chain from Garrett and a shoot out between the gold chain thief aka "another individual" and Garrett.

     The evidence should be precluded. It is remote in time, a discrete offense, and unrelated. Under a 404b analysis it is irrelevant in any manner and overly prejudicial under F.R.E. 403. The defense is aware of the identity of CW1 (and will confirm with the Government) and will not challenge that he is known to Garrett, there is no reason except propensity to admit the above-described crimes.

     b) The government seeks to introduce hearsay through CW1 that Garrett "realized that he could sell drugs for much more money [in Scranton] than in New York" and that CW1 at Garrett's direction began selling drugs in Scranton and did so until Garrett's incarceration in 2001. Again, this evidence is probative of little, if anything, and its prejudice outweighs any probative value under Fed R. Evid. 403. If necessary, the government can adduce proof that drug-selling in Scranton was more profitable in 2007 and onward, as a motive for entering that market – it does not need to reference drug-selling in the 1990's.

**2. Prostitution**

     The prosecution seeks permission to have CW1 testify that a "female" drug courier worked as a prostitute for Garrett in Scranton as did "another female" in a loosely specified distant past. Again, the introduction of this historical evidence is strictly propensity driven and

should be precluded. The government has indicated it intends to call two or more women who allegedly engaged in the charged acts of prostitution at the behest of the defendants. The stale second-hand testimony that CW1 could contribute on the issue should be excluded under a 403 analysis.

### 3. Obstruction of Justice

The prosecution seeks permission to allow CW1 to testify about Garret's purported direction to him to file a false police report "sometime in the late 1990's" as retaliation against another. Michael Garrett is not charged with obstruction of justice in this indictment. Moreover, the alleged act is very remote to the charged crimes. The introduction of this incident into the trial should be precluded. It is not relevant, and is highly prejudicial under Fed. R. Evid. 403 and 402.

### 4. Government seeks introduction of Garrett's Prior Record

As described in government's brief at 16-17 the prosecution seeks permission to introduce Mr. Garrett's prior record to "provide a bridge" (Govt. brief at 16) between activities in 1990's and activity in 2007, noting his release from jail is a "benchmark" to understand why Garrett was able to assume leadership of TF in 2007. (Govt. brief at 37.) As discussed in previous filings (Garrett MIL Reply at 2-3) and noted below, Together Forever (TF) and TF Mafia are related but distinct entities.[2] The prosecution purposefully conflates the two in order to justify

---

[2] The indictment alleges that "Together Forever" also known as the "TF Mafia"' or "TF" is an "association in fact" and constitutes an enterprise as defined by 18 U.S.C. § 1961(4) with purposes that included enrichment of the members through criminal activity. Together Forever and TF Mafia (and TF Mafia Muzik, L.L.C.) have been conflated by the government but are in fact distinct organizations that have some overlap of personnel. Together Forever (TF) – also known as the Together Forever Foundation – was a grassroots community group started by defendant Rivera along with Mr. Garrett and others, in approximately 1984. TF aspired to purposes of community and youth empowerment through artistic expression in the graphic and musical arts and neighborhood activities. TF Mafia, started in 2007, and later TF Mafia Muzik, L.L.C., were formed to promote Rap music, Rap artists, and live Rap musical performances. These two groups, included some overlap of persons and the common thread of Rap music but they are separate and distinct entities. The third entity, TF Mafia

their other acts arguments. There is no need to "provide a bridge" – as previously discussed, evidence of the prior crimes in the 1990's should be excluded. Moreover, the government can introduce evidence that Garrett was a leader of the organization, and knew Rivera, without proving that they engaged in similar conduct years earlier.

Introduction of the defendant's prior convictions and incarceration will have the effect of demonstrating propensity on the part of Michael Garrett rather than allowing for a fair review by the jury of the charges contained in the indictment and should not be allowed pursuant to Fed. R. Evid. 403. The district court has broad discretion to admit or exclude evidence of prior convictions under this Rule. United States v. Estes, 994 F.2d 147, 148 (5th Cir. 1993); United States v. Lochmondy, 890 F.2d 817, 824 (6th Cir. 1989). The justifications offered for the introduction of Garrett's jail record are not persuasive. The introduction of his record is not necessary for anything, but to persuade the jury that he was guilty then and is guilty now. There are less prejudicial ways to achieve the goals the government contends it must have. With disclosure of true names of its witnesses, counsel may be able to agree on issues of familiarity between some government witnesses and Garrett. The defense acknowledges the existence of TF and TF Mafia Muzik as noted above. The Court should exercise its discretion and preclude the introduction of the proffered evidence and ensure a fair trial for Michael Garrett.

Additionally the prosecution expects "one or more CWS or witnesses" to testify that TF Mafia is a subset of Together Forever "similar to a 'set' or 'clique' within a gang like the Bloods" and one CW will testify that Garrett told him that "he had developed ties to the Gotti family while

---

Muzik L.L.C. has been a business entity registered with New York State Department of State: ID #: 3672451 since May 15, 2008.

9

in prison." (Govt Brief at 17). Any testimony identifying TF Mafia – a registered business – as mafia or Bloods-related must be precluded as overly prejudicial with no probative value. As previously noted in defense counsel's answer to the Government's First Motion in Limine, "As stated on the TF Mafia Website their intention in adopting the word "mafia" was to "put their own flip on a word meaning negative things and turned it into something positive." (Def. MIL Resp. at 3-4) More, there is no evidence to support such a nexus and introduction of these purported statements or comparisons to the infamous violent street gang the Bloods or a well-known organized crime family, would be extremely prejudicial under Fed. R. Evidence 403.

5.   **TF's Means And Methods Of Control**

The prosecution seeks to introduce historic acts of violence[3] as evidence of use of violence and threats to control members of the charged conspiracy. Specifically they would like the Court to admit testimony from "Individual #3" that he/she advised Garrett and Rivera that "Individual #2" planned to rob drugs from Garrett's apartment. And, according to "Individual #3" Rivera beat "Individual #2" with a hammer and "Individual #3" punched him in face and Rivera and Garrett threatened to kill "Individual #2's" family.

Further, the government seeks to introduce evidence that Garrett beat "Individual #4" for attempting to take coke from him and also hit "Individual #4" in the head with a gun. No time frame is provided for these allegations, nor are the parties identified in a meaningful way. Additionally it is unclear how the government intends to prove this information, as written it

---

[3] without identifying the time frame in which they purportedly occurred, and who the individuals participating in these events are – admission of this testimony effectively leaves defendants to guess who the accusers may be and when the allegations may have occurred.

10

appears to require multiple layers of hearsay by unknown parties and should be precluded.

The government seeks to introduce evidence that CW1 was assaulted by Garrett three times at some time in the 1990's. The first according to CW1 was a punch to his face and stab to the stomach of Garrett's Landlord when his apartment was burglarized. The following two incidents occurred when CW1 had sexual contact with two girls CW1 contends were girlfriends of Garrett.

For other act evidence to be considered, a justifiable reason need be proffered. Here the government seeks to introduce brawling over women and a perceived theft as proof of control. The court should preclude this testimony under Fed. R. Evid. 403. As previously argued, these acts are discrete offenses, remote in time, and not undertaken to conceal or further charged conduct. Nor are they inextricably intertwined with charged conduct.

**6. Fines**

Here the prosecution reprises earlier requests to introduce evidence from the 1990's without any specificity that allows the defense to test the reliability of the accusations. They ask the Court to allow testimony that Garrett fined CW1 when CW1 pulled a gun on someone, somewhere in Brooklyn, sometime in the late 1990s; that Garrett fined CW1 for sexual contact with his girlfriend sometime in the 1990s, that sometime in the 1990s CW1 was "banned" from selling drugs in Scranton because he had sexual relations with "a woman" who was involved with Garrett and that "another member of TF" was fined when he lost Garrett's "guns" sometime in the 1990s. Last the government seeks to introduce a video recovered from Rivera's computer that purportedly depicts Garrett burning TF members money to discipline them - sometime in the

1990's.[4]

The introduction of a video of burning currency from the 1990's is strictly propensity evidence – he did it then/he's doing it now. It is not inextricably bound with the charged crime offense and is remote in time. It should be precluded under Fed. R. Evid. 403.

## 7. Garrett's "Threats and Intimidation"

The Government seeks through the introduction of two publicly posted videos published for the world to see and designed for entertainment and promotional purposes to suggest that these were created and published to intimidate and control potential victim-witnesses. The introduction of both of these videos was previously addressed in defendant's Garrett's answer to the government's first motion in limine at 25, 39.[5]

---

[4] This video was not provided to counsel in the production of clips they identified as possible exhibits in their first motion in limine. Counsel respectfully requests a clip of same be immediately provided for review and reserves the right to make argument on appropriateness of admissibility. The Government makes no representation that this clip contains pornographic representations of minors or any other obstacles to disclosure. That the government has afforded the defense an opportunity to inspect the several hundred gigabytes of Rivera computer data is no substitute for Rule 16 discovery of this video.

[5] **Admissibility of "Docudrama" video excerpts**
Although the government refers to this video as a "documentary" it is a fictionalized dramatic piece comprised of differing scenes, and replete with rap songs of all genre on common political themes seen in many Rap videos as previously discussed. For example it includes samples from other media including , frequent repetition of Denzel Washington in the role of Malcolm-X, saying, "We Will Never be Free." The conversations are scripted designed for a video audience and many of the locales are reenactments of sorts designed for entertainment purposes and purposefully sensationalized to encourage an online audience to continue to watch. This is an entertainment piece not a documentary.

Further, many portions that the prosecution as identified are not relevant and are solely offered to inflame and prejudice the jury referencing allegiance by the speakers other than Garrett to well known and feared street gangs. Last, in the event the court deems certain portions relevant it should preclude their introduction as overly prejudicial whose slight benefit is outweighed by the prejudice to the defendant.

Finally, the defendant requests that the government be precluded from using the misleading term "documentary" in reference to this video. A typical layman's definition of "documentary" as a "movie or a television or radio program that provides a factual record or report." See, e.g. www.oxforddictionaries.com/us/definition/american_english/documentary. The term itself is conclusory and endows the video with an aura of fact that is in no way merited. It invades the province of the jury to make this determination for itself.

**Admissibility of YouTube Video "The Rats who lied on Paulie Zance"**
This 8-minute video is an interview between two of the witnesses expected to testify at trial, with Michael

12

8. **Garrett's Bail for CW# 3**

The defendant objects to the introduction of any testimony concerning the facts and circumstances of CW3's arrest and the related court proceedings as irrelevant, confusing, and creating a trial within the trial. The court should preclude under Fed. R. Evid. 403. Garrett also objects to the anticipated testimony concerning the alleged posting of the witness's bail by Garrett and requests that the Court require an offer of proof concerning its relevance before allowing testimony on the issue.

9. **Garrett's Drug Use**

The government seeks to introduce testimony that Garrett used illegal drugs - marijuana - before and during the charged conspiracy and various witnesses will testify they used drugs with Garrett at various locations throughout Brooklyn and Scranton. Defendant seeks preclusion of any introduction of drug use. As an initial matter, the historical use of drugs and or marijuana is remote, not inextricably interwoven with current crimes, and highly prejudical.

As to use of drugs during the charged conspiracy, there is nothing about Garrett's use of drugs that is probative of any issue at trial and introduction of this evidence is highly prejudicial and should be precluded under Rule 403.

## Conclusion

The Government's request should be denied in its entirety as an attempt to "over-persuade" the jury of alleged facts that have little connection to the charges in this matter. Under

---

Garrett and others appearing. The witnesses in the video laugh, show off their recent jail photos posted on Face Book, and affectionately refer to the other persons present at the time of taping. It is anticipated that both witnesses will testify on behalf of the government. This out of court statement was made voluntarily and uploaded onto the web prior to the witnesses' cooperation with the prosecution in the instant case. Counsel renews its requests for preclusion under Fed. R. Evid. 401 and 403.

13

Huddleston v. United States, 485 U.S. 681 (1988), If the evidence does not provide a basis for inferring legitimate 404(b) purposes, the evidence should not be admitted. See also, United States v.Afjehei, 869 F.2d 670, 674 (2d. Cir. 1989).   United States v. Gonzales, 110 F.3d 936, 942 (2d Cir. 1977).

In all of the instances cited above, the prosecution is seeking to bootstrap the act and/or conviction into a "same crimes" propensity argument while justifying the introduction under the strictures of Rule 404b and other specious arguments.

In the event the Court does not preclude the introduction of other crime evidence based on the submissions of the parties, the defendant requests a hearing on these issues demonstrating the relevance of the other crimes evidence pursuant to Fed. R. Evid 403, their admissibility pursuant to Fed. R. Evid. 609 (b), and other such relief as this court may deem just and proper. This relief may include limiting the introduction of the evidence to the Government's rebuttal case and an instruction to the jury explaining the limited purpose for which the evidence is offered. It is respectfully requested that these issues be resolved prior to opening statements.

Brooklyn, New York
Dated: February 25, 2015

                                                       /S/
                                         Kelley J. Sharkey